**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| TOTAL PETROLEUM P.R. CORP.,<br>    Plaintiff,<br><br>    v.<br><br>VILLA CAPARRA ESSO SERV. CTR.,<br>*et al.*,<br>    Defendants. | Civil No. 16-2436 (PAD/BJM) |

**REPORT AND RECOMMENDATION**

Total Petroleum Puerto Rico Corporation ("Total") filed suit against Villa Caparra Esso Service Center, Rafael Fonseca-Marrero, Fonseca-Marrero's unnamed wife, and their conjugal partnership ("Defendants") on August 3, 2016. Dkt. 1. Total alleged trademark infringement and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), (c), and Total sought injunctive relief, declaratory relief under 28 U.S.C. §§ 2201–2202, damages and collection of monies owed under 31 L.P.R.A. §§ 2994, 3018, 3019, 3024, 3371, to judicially dispossess Defendants under 31 L.P.R.A. § 4066, and all attorney's fees and costs incurred in the litigation. *Id.* The parties jointly submitted a proposed order for a permanent injunction, which the court then ordered. Dkt. 45.

Total's motion for partial summary judgment and motion to deem unopposed are currently pending before the court. Dkts. 49, 53. Total seeks a declaratory judgment finding its termination of the franchise relationship valid and legally enforceable and ordering Defendants to pay monies owed for rent payments, fee payments, and other product payments pursuant to the contracts governing their relationship. Dkt. 49 at 4. The case was referred to me for a report and recommendation. Dkt. 29.

For the reasons set forth below, Total's motion for partial summary judgment and motion to deem unopposed should be **GRANTED IN PART.**

Case 3:16-cv-02436-PAD-BJM Document 54 Filed 10/30/18 Page 2 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM) 2

## BACKGROUND

The factual record is summarized here using the Local Rule 56 statements of uncontested facts.[1] Because Defendants failed to oppose Total's motion for summary judgment, the court begins by adopting as true Total's Statement of Uncontested Facts at Docket 50 ("SUF"). *See infra* Discussion, Mtn. to Deem Unopposed.

Total is a Puerto Rico company that owns real property in the Municipality of Guaynabo. SUF ¶¶ 1, 4. Rafael Fonseca-Marrero ("Fonseca") is the president of Villa Caparra Esso Service Center, also a Puerto Rico company. SUF ¶¶ 2, 3. On February 15, 2012, Total leased that property to Defendants for three years. SUF ¶ 5. Three separate contracts govern the parties' franchise relationship, and the Defendants' breach of any material provision entitles Total to terminate any of the agreements. SUF ¶ 17.

In the Lease Agreement, Dkt. 16-1, Defendants agreed to use the property only for operating a gasoline service station under the "TOTAL" brand, to pay a monthly rent depending on fuel sales, and to be subject to termination if Defendants failed to make the payments due to Total. SUF ¶¶ 6–8. In exchange, Total would sell Defendants gasoline, motor fuel, and other products for resale at the station, grant Defendants the right to use assets on the real property to sell gasoline and other goods. Dkt. 16-1 at 1. The Lease Agreement states:

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are both uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, also with record support, paragraph by paragraph. *Id.* at 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). When the moving party replies to the opposition to a motion for summary judgment, that reply must include a statement of material facts limited to those submitted by the opposing party. D.P.R. Civ. R. 56(d). Like the party's initial statement, this reply must "admit, deny, or qualify those additional facts by reference to the numbered paragraphs of the opposing party's statement of material facts." *Id.* While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

Case 3:16-cv-02436-PAD-BJM   Document 54   Filed 10/30/18   Page 3 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM)   3

> Late payments will be charged a late payment fee equivalent to ten percent (10%) per month of the total payment pending. The Retailer acknowledges and agrees that failure to pay the amounts and rents owed under this Contract, whichever the case, constitutes a material breach and a reason to terminate this Contract.

*Id.* at Art. 4.4. Article 16 further details grounds on which the contract might be canceled or terminated. It specifically warns that "[f]ailure to promptly make payments due or failure to pay any amount owed to the Company" is grounds for termination. *Id.* at Art. 16.1(c).

Total and Defendants also entered a Sales and Supply Agreement, Dkt. 16-2, in which Defendants promised to pay Total for the delivery of fuel and other products, including "TOTAL" branded ones, in exchange for the right to sell those products and operate a gas station under the "TOTAL" trademark. SUF ¶ 9–10. The parties agreed that Defendants' failure to comply with the agreement would trigger Total's right to demand compliance, suspend product deliveries, cancel credits, and terminate its franchise relationship with Defendants. SUF ¶ 11. The Sales and Supply Agreement states that the grounds for termination of the contract include:

> Lack of punctual compliance with the due payments or of any amount indebted to the company priced [sic] that a payment by check will not be considered made until cashed by the Company and that the bouncing of a check issue by the bank may cause a termination of the Contract if after being requested the payment in cash or any other form by the Company the detailer fails to make it within the next twenty-four (24) hours . . . .

Dkt. 16-2, Art. 16.1(c). In the event of termination, the Defendants agreed that any amounts still owed to Total would become due. SUF ¶ 12. The cancellation or termination of the Lease Agreement or Franchise Agreement triggers the automatic expiration of the Sales and Supply Agreement. Dkt. 16-2, Art. 17.1. Breach of the Sales and Supply Agreement makes payable:

> [A]ll that is indebted . . . without the Company losing its right to request an indemnity on the part of the Detailer for damages which the parties limit to a sum equivalent to the sale price of the minimum monthly amount fixed for the purchase of gasoline plus oil and lubricants, as the cases may be, multiplied by the remainder of the contract at the date of termination.

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM) 4

*Id.*

The Franchise Agreement, Dkt. 16-3, governs the operation of the convenience store on the property under the "BONJOUR RAPIDE" brand and system. SUF ¶ 13. Under the Franchise Agreement, Defendants agreed to pay Total the greater of $1,300 or six percent of the convenience store's gross sales as a monthly franchise fee. SUF ¶ 14. Defendants' failure to comply with the agreement triggers Total's right to demand compliance and suspend product deliveries, and Defendants are obliged to pay any sums owed to Total should the franchise relationship be terminated. SUF ¶¶ 15–16. Like the Lease Agreement, the contract provides that:

> Late payments will be charged a late payment fee equivalent to ten percent (10%) per month of the total payment pending. The Retailer acknowledges and agrees that failure to pay the amounts and franchise charge owed under this Agreement, whichever the case, constitutes a material breach and a reason to terminate this Agreement.

Dkt. 16-3, Art. 10.5. Breach of the payment of franchise fees clause entitles Total to terminate the Agreement. *Id*. at Art. 10.8. The Franchise Agreement also employs the same clause as the Sales and Supply Agreement, in which both parties agree "[f]ailure to promptly make payments or failure to pay any amount owed" constitutes a material breach of the contract and permits the contract to be canceled and terminated. *Id.* at Art. 15.1(c). Upon termination, the Agreement obligates Defendants to, among other things:

> Pay and satisfy in full the Company and the suppliers and providers or Store Products and Services, any amount owed or payable within fifteen (15) days of the effective date of cancellation or expiration of this Contract, including any applicable accrued interest.

*Id.* at Art. 15.2.

On January 7, 2015, Total requested payment from Defendants. SUF ¶ 20. The emailed request notes that Defendants had not made payments toward their account since December 22, 2014. Dkt. 16-4. The following day, the parties met, and Fonseca admitted that Defendants owed Total money under the Franchise Agreement but did not make any

Case 3:16-cv-02436-PAD-BJM   Document 54   Filed 10/30/18   Page 5 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM)                    5

payments. SUF ¶¶ 22–23; Dkt. 16-7. An email memorializes the parties' agreements at the meeting, including that (1) all outstanding rents would be paid, (2) all checks delivered to Total had been applied to the Defendants' account, and (3) all invoices pending payment would be paid once there was evidence that they were received. Dkt. 16-6. Total made email requests for payment again on January 9, 2015 and October 27, 2015 and suggested different methods by which the money could be repaid. SUF ¶¶ 20–21. Defendants failed to pay the money due or otherwise cure their default. SUF ¶ 23.

On July 8, 2016, Total served Defendants with a termination notice, effective immediately. SUF ¶¶ 24, 27; Dkt. 16-8. The notice was in writing and delivered by hand, email, and certified delivery. SUF ¶ 28. The termination notice cites breaches of contractual provisions, namely failure to pay, as grounds for termination. Dkt. 16-8 at 2. In addition to failing to pay amounts owed, Total contends that Defendants' failed to take "reasonable efforts or . . . good faith measures to comply with the terms and conditions of the franchise relationship." *Id*. Total enclosed a summary of the PMPA and an account statement in the notice. *Id.* at 3. The account statement reflects that, as of July 8, 2016, Defendants owed Total $17,850.00 plus interest for rent payments under the Lease Agreement, $31,500.00 plus interest for rent payments under the Franchise Agreement, and $46,936.88 plus interest for fuel under the Sales and Supply Agreement. SUF ¶ 19. Currently, Defendants owe Total $18,850.00 under the Lease Agreement, $33,000.00 under the Franchise Agreement, and $51,076.81 under the Sales and Supply Agreement for a total of $102,926.81. SUF ¶ 30, 31.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law."

Case 3:16-cv-02436-PAD-BJM Document 54 Filed 10/30/18 Page 6 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM)  6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

**Motion to Deem Unopposed**

"When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." *Perez-Cordero v. Wal-Mart P.R.*, 440 F.3d 531, 533–34 (1st Cir. 2006) (citing *NEPSK, Inc. v. Houlton*, 283 F.3d 1, 7-8 (1st Cir. 2002)). Defendants have not responded to the instant motion for partial summary judgment that Total filed on July 19, 2018. Dkt. 49. Local Rule 7(b) requires parties to respond to motions within fourteen days, or they will be deemed as having waived objection. Twenty-three days passed before Total filed its motion to deem unopposed on

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM) 7

September 17, 2018. Dkt. 52. Defendants have yet to respond to either motion; in fact, they have not filed a motion since May 31, 2018. Dkt. 43.

As a result of Defendants' continued failure to respond, the court should find that the motion for summary judgment is unopposed and accept as uncontested all evidence presented in the supplemental statement of facts.

**Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 governs even an unopposed motion for summary judgment, so the facts before the court must be viewed in the light most favorable to the Defendants. *See Griggs-Ryan v. Smith*, 904 F.2d at 115.

### *Termination of the Franchise Relationship*

The Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*, governs franchise relationships; it is "a conventional dealer-protection statute limiting the circumstances in which a motor fuel franchisor can terminate or choose not to renew a franchise relationship." *Santiago-Sepulveda v. Esso Standard Oil Co. (P.R.)*, 643 F.3d 1, 4 (1st Cir. 2011).

The PMPA permits a motor fuel franchisor like Total to terminate a franchise relationship on a handful of specific, enumerated grounds. *See* 15 U.S.C. §§ 2802(b)(2)(A)-(E). The ground pertinent here is "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" where the event occurs during the course of the franchise relationship and the franchisor had actual or constructive knowledge of that event. § 2802(b)(2)(C). The PMPA provides a nonexhaustive list of relevant events that render termination reasonable, and it is the franchisor's burden to prove that termination was reasonable. § 2802(c)(1)–(12); *Santiago-Sepulveda*, 643 F.3d at 5. This burden is two-part: the franchisor must satisfy § 2802(b)(2) by having proper grounds for termination and, as a general matter, must have given the franchisee either ninety days' notification or the earliest notification that is "reasonably practicable." *See* § 2804(b)(1)(A). Courts

Case 3:16-cv-02436-PAD-BJM Document 54 Filed 10/30/18 Page 8 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM) 8

interpret the notification requirement generously, providing franchisors with significant latitude in cases where a franchisee has been delinquent in making payments. *Total Petroleum Puerto Rico Corp. v. Quintana*, Civil No. 16-2979, 2017 Lexis 118219, at 11 (D.P.R. July 12, 2017) (citing *Equilon Enters., L.L.C. v. Rahim, Inc.*, 80 F. App'x 463, 468 (6th Cir. 2003)).

Total alleges, and the court accepts as true in the absence of any dispute from Defendants, that Defendants owed money to Total under each of the three contracts between the parties and failed to pay. SUF ¶¶ 20–25. "[F]ailure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled" is a relevant event that makes termination reasonable under the PMPA. § 2802(c)(8). Total's emails to Defendants indicate that, as early as December 22, 2014, Defendants failed to pay money owed to Total. Dkt. 16-4. Total and Defendants communicated via email several times: seeking to arrange a meeting, memorializing that meeting, and laying out Defendants' account with Total and the monies owed. Dkts. 16-4, 16-6, 16-7. These records make clear that Total had "actual . . . knowledge" of Defendants' failure to pay. § 2802(b)(2)(C).

Having demonstrated the reasonable grounds for termination, Total must also prove that the termination notice either satisfies or qualifies for an exception to the PMPA's notification requirements. The franchisor must give the franchisee ninety days' notice of termination or nonrenewal unless such a period would not be reasonable. §§ 2804(a)(2), (b). When a relevant event occurs and termination is reasonable in fewer than ninety days, then the franchisor has grounds to terminate the relationship if it "first acquired actual or constructive knowledge of such occurrence not more than 60 days prior to the date on which notification of termination . . . is given, if notification is given pursuant to section 104(b)(1) [15 U.S.C. § 2804(b)(1)]" as it is here. § 2802(b)(2)(C)(ii). This district has consistently held that a failure to pay monies owed justifies less than ninety days' notice. *See, e.g.*, *Quintana*, 2017 U.S. Dist. LEXIS 118219, at 11 (stating failure to pay was an

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM) 9

adequate basis for a notice of termination effective immediately).[2] As of the termination notice sent July 8, 2016, Defendants owed Total $96,286.88. Total made several attempts to collect the money since its first email in January 2015, and Defendants still have not paid their debt.

Total made its first request for delinquent payment on January 7, 2015. Dkt. 16-2 at 2. This represents the moment at which Total gained actual knowledge of a relevant event that justified termination of the franchise relationship. Total delivered the termination notice, effective immediately, on July 8, 2016. The interim eighteen months far exceeds the sixty-day window to provide notice of termination. The timeliness provision should not be dismissed lightly, but it may be excused where a breach is continuous or repeated. *Chevron U.S.A., Inc. v. Finn*, 851 F.2d 1227, 1230 (9th Cir. 1988), *cert. denied*, 489 U.S. 1054 (1989) ("[W]here there are multiple violations of the lease, each violation constitutes a separate ground for termination."); *accord Geib v. Amoco Oil Co.*, 29 F.3d 1050 (6th Cir. 1994); *Cal. Petroleum Distrs. Inc. v. Chevron U.S.A. Inc.*, 589 F. Supp. 282, 287-288 (E.D.N.Y. 1984); *Gruber v. Mobil Oil Corp.*, 570 F.Supp. 1088, 1092 (E.D. Mich. 1983). Time limitations in the PMPA were intended to prevent termination based on long-forgotten events but not to stop termination based on future events. *Finn*, 851 F.2d at 1231 (citing S. Rep. No. 95-731, *as reprinted in* 1978 U.S.C.C.A.N. 892). Treating a franchisee's nonpayment as a new event each day enables a franchisor to extend deadlines and work

---

[2] *See also Total Petroleum P.R. Corp. v. Colón*, 819 F.Supp.2d 55 (D.P.R. 2011) (fifteen-day notice permitted after failure to pay $81,445.50 and repeated attempts to collect monies owed); *Chevron P.R., LLC v. Martínez-Valentín*, Civil No. 10-1192, 2011 WL 147911 (D.P.R. Jan. 13, 2011) (30 days' notice of termination for failure to pay $77,109.01); *Chevron P.R., LLC v. Pérez Rosado*, 673 F.Supp.2d 69 (D.P.R. 2009) (10 days' notice of termination for failure to pay more than $20,000 and to operate franchise for over sixty days); *Sol P.R. Ltd. v. Luis Morales-Collazo*, Civil No. 09–1548, 2009 WL 1796549 (D.P.R. June 23, 2009) (immediate termination permitted on failure to pay more than $12,000.00 owed and failure to sell gas for 30 days); *Total Petroleum P.R. Corp. v. TC Oil, Corp.*, Civil No. 09–1105, 2009 WL 702226 (D.P.R. Mar. 11, 2009) (termination valid where $110,000 owed and parties failed several times to agree on a payment plan); *Total Petroleum P.R. Corp. v. Renta Santiago*, Civil No. 08–1876, 2008 WL 4006671 (D.P.R. 2008) (termination effective immediately after multiple attempts to collect monies owed and failure to operate franchise).

Case 3:16-cv-02436-PAD-BJM Document 54 Filed 10/30/18 Page 10 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM) 10

with a franchisee to develop a payment plan or alternative methods to maintain their relationship, instead of starting the timer on termination. This fulfills the PMPA's purpose of protecting franchisees without overly inhibiting franchisors. Total spent those eighteen months of nonpayment in communication with Defendants, attempting to collect the debt owed. Because the continual nonpayment was a new event each day, and because Total's conduct in the interim did not imply that it would waive payment, the termination notice may be considered timely because it was sent within sixty days of nonpayment occurring.

Total's termination thereby meets the requirements laid out in the PMPA, and its termination of the franchise relationship with Defendants is valid. Accordingly, the court should issue a judgment declaring that Total's termination of the franchise relationship is legally enforceable, effective as of July 8, 2016, and in compliance with the PMPA.

### *Breach of Contract*

Total also moves for summary judgment on the matter of declaratory relief for the sum Defendants owe, which Total alleges is $102,926.81. As the creditor, Total has the burden to prove the debts owed; Defendants have the burden to prove the extinction of those debts. 31 L.P.R.A. § 3261. "Under Puerto Rico law, a cause of action for breach of contract consists of three elements: (1) a valid contract, (2) a breach by one of the parties to the contract; and (3) resulting damages." *Ocasio v. Perfect Sweet Inc.*, No. 16-2012, 2018 U.S. Dist. LEXIS 124598, at *7 (D.P.R. July 23, 2018) (quoting *Mega Media Holdings, Inc. v. Aerco Broad. Corp.*, 852 F. Supp. 2d 189, 199 (D.P.R. 2012)). A party seeking damages must show a causal link between the breach and the damages sought. *See Nazario v. Vélez & Asoc.*, 98 T.S.P.R. 54 (P.R. 1998) ("As is known, when the breach of a contractual obligation causes harm to any of the contracting parties, an action for damages for breach of contract lies."); *see also Colon v. Blades*, 717 F. Supp. 2d 175, 185 (D.P.R. 2010) ("An action for damages for breach of contract . . . only lies when the damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract.").

Case 3:16-cv-02436-PAD-BJM Document 54 Filed 10/30/18 Page 11 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM) 11

In this case, the parties entered three contracts. The Lease, Sales and Supply, and Franchise Agreements each concerned the exchange of money for goods and property. The contracts obliged both Total and Defendants to deliver goods, property, and payment according to their terms. "Persons obliged to deliver or to do something are in default from the moment when the creditor demands the fulfillment of their obligation, judicially or extrajudicially." 31 L.P.R.A. § 3017. Emails between the parties make clear that Defendants were aware of their default. *See, e.g.*, Dkts. 16-4, 16-5. When Defendants failed to make payments due to Total, they breached the contracts governing the franchise relationship. This breach directly relates to the damages claimed, which is the amount of money owed to Total under the contracts plus interest. The law provides for recovery of losses suffered, including lost profits which were or should have been foreseeable at the time the contract was formed. 31 L.P.R.A. §§ 3023–24. Where the breach consists of nonpayment, the breaching party, unless otherwise stipulated, recovery for losses and damages includes the payment of interest at either an agreed-upon rate or the rate of six percent. 31 L.P.R.A. § 3025. A debtor extinguishes his debt by either paying it in full or making the full benefit of the debt owed to the creditor. 31 L.P.R.A. § 3161.

Before the relationship was terminated on July 8, 2016, Defendants owed Total $17,850.00 plus interest for rent payments under the Lease Agreement, $31,500.00 plus interest for rent payments under the Franchise Agreement, and $46,936.88 plus interest for fuel under the Sales and Supply Agreement. SUF ¶ 19. Currently, Defendants owe Total $18,850.00 under the Lease Agreement, $33,000.00 under the Franchise Agreement, and $51,076.81 under the Sales and Supply Agreement. SUF ¶ 30.

Accordingly, the court should hold that Defendants are in default and owe Total $96,286.88 plus applicable interest.[3] The sums owed under the Lease Agreement and

---

[3] Docket No. 50-2 appears to be Defendants' account statement, but the full chart is cut off on the righthand side. It also includes dates during which, based on Total's arguments, Defendants were not in default. A clearer picture is needed before holding that Defendants owe the sum alleged, $102,926.81.

Case 3:16-cv-02436-PAD-BJM Document 54 Filed 10/30/18 Page 12 of 12

Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr., Civil No. 16-2436 (PAD/BJM)　　　12

Franchise Agreement each entitle Total to "a late payment fee of ten percent (10%) per month of the total payment pending." Dkt. 16-1, Art 4.4; Dkt. 16-3, Art. 10.5. In the absence of a state interest rate for money owed under the Sales and Supply agreement, the legal rate of six percent should be used unless Total can show that the parties specified an alternative rate. *See* 31 L.P.R.A. § 3025.

## CONCLUSION

For the foregoing reasons, I recommend that the motion for partial summary judgment be **GRANTED IN PART** and Total should be ordered to file an informative motion detailing the calculation of the interest and full amount owed by Defendants.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 30th day of October, 2018.

　　　　　　　　　　　　　　　　　*S/ Bruce J. McGiverin*
　　　　　　　　　　　　　　　　　BRUCE J. MCGIVERIN
　　　　　　　　　　　　　　　　　United States Magistrate Judge